T.C. Summary Opinion 2005-138


UNITED STATES TAX COURT


THOMAS L. & C. MARLENE PIAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10304-04S.            Filed September 19, 2005.


Thomas L. and C. Marlene Pias, pro se.

<u>James E. Schacht</u> and <u>Mark J. Miller</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.[1]  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]    Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
year in issue.

Respondent determined a deficiency of $9,934 in petitioners' 2001 Federal income tax. The issues are whether petitioner Thomas L. Pias (petitioner) was in a trade or business of gambling and whether the parties had previously settled the case. Petitioners resided in Racine, Wisconsin, when the petition in this case was filed.

## Background

The facts may be summarized as follows. After 28 years, petitioner retired as an accountant with a local automobile distributorship in January 2001. Prior to that time, he had gambled occasionally at casinos. In August 2000, petitioner received the following written advice from the local office of the Internal Revenue Service:

> A gambler is engaged in a trade or business [of being a] "professional gambler" when the gambling activity (1) is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and (2) is not a mere hobby; resolution of this issue requires an examination of the facts in each case.
>
> Commissioner of Internal Revenue v. Groetzinger
> No. 85-1226
> Supreme Court of The United States

Subsequent to his retirement, petitioner began going to casinos 2 or 3 times a week. This shift in his behavior was prompted by what petitioner thought was a "lucky streak." His gambling consisted of playing video poker machines. Petitioner returned to work in September 2001.

Petitioner was issued Forms W-2G, Certain Gambling Winnings, totaling $38,800 by the casinos that he frequented. On Schedule C, Profit or Loss From Business, attached to petitioners' joint 2001 Federal income tax return, petitioner reported this amount as income and claimed deductions for gambling losses of $68,861,[2] tolls of $149, automobile expenses of $421, and other expenses of $1,157. Petitioner claimed an overall loss of $31,788 from the trade or business of gambling. In the notice of deficiency, dated March 15, 2004, respondent allowed a deduction for gambling losses of $38,800 on Schedule A, Itemized Deductions, and disallowed the balance of the deductions claimed on Schedule C. The amount of the deficiency was $9,934. The notice was issued from the Brookhaven Internal Revenue Service Center (referred to herein as the Service Center), in Holtsville, New York. Petitioners mailed their petition to this Court on June 12, 2004.

By letter dated June 1, 2004, the Service Center proposed a revised deficiency of $5,681. Although the statement disallows gambling losses in excess of gambling income, the proposed changes in the income and losses do not relate to either the figures on petitioner's Schedule C or the statutory notice. The letter provides that petitioners must sign and date the "total agreement statement" and return it. The total agreement statement provided:

---

[2] Figures are rounded to the nearest dollar.

I consent to the immediate assessment and collection of any increase in tax and penalties plus interest shown * * *. I understand that by signing this waiver, I won't be able to contest these changes in the U.S. Tax Court unless additional tax is determined to be due for 2001.

Petitioners did not execute the "total agreement statement"; an assessment was made; and collection notices were sent to petitioners. On September 13, 2004, the assessment was abated in light of the filing of the petition in this Court.

Subsequently, petitioner contacted the local Appeals officer handling the case and expressed his agreement to the deficiency proposed in the June 1, 2004, letter. Petitioner was told that his acceptance was not timely. Nonetheless, petitioner paid the revised deficiency of $5,681 which amount was posted to petitioners' 2001 account as an "advance payment of determined deficiency".

## Discussion

Section 61(a) defines gross income to mean all income from whatever source derived. Gambling winnings, whether reported or not, are includable in gross income. Paul v. Commissioner, T.C. Memo. 1992-582. In the case of an individual, section 62(a) defines adjusted gross income as gross income less certain deductions, including deductions attributable to a trade or business carried on by the taxpayer. Sec. 62(a)(1). If petitioner's gambling activity constituted a trade or business, his gambling losses would be deductible from gross income in

arriving at the adjusted gross income on Schedule C. If petitioner's gambling activity did not constitute a trade or business, his gambling losses would be deductible as an itemized deduction in arriving at taxable income on Schedule A. Sec. 63(a). But, regardless whether or not the activity constituted a trade or business, section 165(d) provides that "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." See also sec. 1.165-10, Income Tax Regs. Petitioner does not dispute that section 165(d) applies here.

Petitioner claims to be in the trade or business of gambling, and we are, therefore, faced with the question whether he is entitled to claim deductions on Schedule C. In Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), the Supreme Court held that "if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business". We are willing to assume that petitioner did devote many hours at the casinos playing video poker with some degree of regularity. We are not satisfied, however, that petitioner looked to this activity for a production of income for his livelihood. Petitioner's explanation for his activity was that at the end of 2000 he "was in what I thought was a lucky streak." This explanation rings more of a pastime or a hobby than of an

activity for the production of income for a livelihood.  To be sure, the volume of the activity may have gotten out of hand, but the underlying purpose for the activity did not change. Petitioner was not in a trade or business of gambling.

Petitioner also contends that he settled this case pursuant to the June 1, 2004, letter.  If we treat the letter as a prepetition settlement attempt, the requirements of sections 7121 and 7122 (settlement agreements) have not been satisfied.  See Dormer v. Commissioner, T.C. Memo. 2004-167.  If we treat the letter as a postpetition offer of settlement, that offer was contingent on petitioners executing the total agreement statement, and there is no evidence that they complied with that requirement.  In this regard, petitioner testified that he did not know, until October 2004, that section 165(d) disallows gambling losses that exceed gambling income and that he then told the Appeals officer in Wisconsin that he "was going to agree to that assessment and pay the tax and the interest."  There can be no question that petitioners had not previously accepted any offer to settle.  It seems most likely that petitioner was trying to play both ends against the middle, and when he learned of section 165(d) he then attempted to resuscitate the offer that they had ignored.  We do not find that the offer in the June 1, 2004, letter, assuming it constituted a valid offer, was timely accepted.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.